Pollock, J.
At the present term of this court the grand jury returned an indictment against T. A. Roedefer for employing a boy under sixteen years of age after seven o’clock at night. This indictment was brought under Section 6986-8 of the Revised Statutes which provides.:
“No boy under sixteen years of age, and no girl under eighteen years of age, shall be employed at any work at night time later than seven o’clock in the evening nor earlier than six o’clock in the morning.”
To this indictment, there, is a demurrer filed which raises the question of the constitutionality of this statute, and the claim *338 is made that it is in violation of the Constitution of the state of Ohio, under the first section of the Bill of Rights, and also that it is in violation of the Fourteenth Amendment to the Constitution of the United States.
If this provision of the statutes can be sustained at all, it must be sustained under what is known as the police power of the state. When you come to examine all of the decisions construing that power, or attempt to examine them, you become swamped.
I may say that possibly every state has some act or provision in its Constitution similar to the one in the Constitution of this state, and they all recognize the validity of the police power, and the right of the state to use it in certain cases. It is difficult to define the police power of a state; but it is the natural rights surrendered by the individual by reason of his becoming a member of the society called the state; and this right increases or diminishes as the population and civilization increases. A man has to surrender more of his rights who lives in a thickly populated city than one who lives out on some prairie with no one around him.
Now let us look a little further as to the definition or description of this police power. The 70th Pacific Reporter, page 54 (State v. Buchanan), quoting from Blackstone, says:
“This all flows from the old announcement made by Blackstone that when man enters into society, as .a Compensation for the protection which society gives to him, he must yield up some of his natural rights, and, as the responsibilities of the government increases and a greater degree of protection is afforded to ’the citizens, the recompense is the yielding of more individual rights. ’ ’
It is defined by the Supreme Court of the United States in 113th U. S., page 27, to be the power of the state to prescribe regulations to promote the health, peace, morals, education and good order of the people. These are the subjects it is usually aimed at — the health, morals, and education of the people.
Possibly it is admitted that the object aimed at by this statute is a proper object — the health, morals, and education of the minors of the country; but the claim is made that it is an arbitrary rule and does not subserve the purpose or intention for *339 which it was enacted. But, it may be well to look to some of the decisions in regard to what the limitations of different courts have been.
In the 69th Northeastern Reporter, page 373, in the case of People v. Lochner, the Legislature had passed a law limiting the number of hours an employe could work in a bakery. The first proposition of the syllabus says:
“1. The law providing that no employe shall be required to work in a bakery or confectionery establishment more than sixty ho'urs in any one week, nor more than ten hours a day, except for the purpose of making a shorter workday on the last days of the week, nor more hours in any one week than will make an average of ten hours per day for the number of days which the employe shall work, is an exercise of the police power relating to the public health.”
Then it says that it is not a violation of the Constitution of the state of New York which contains a provision practically the same as the provision in the Constitution of this state. The decision discusses the question of the growth of this power; that when the country was an agricultural country there were many things which would have been a violation of the Constitution, but which now as the country has advanced in population and civilization have become necessary to be prohibited for the public health. It says:
“They are mentioned only for the purpose of calling attention to the probability that other changes of no less importance may be made in the future, and that, while the cardinal principles of justice are immutable, the methods by which justice is administered are subject to constant fluctuation, and that the Constitution of the United States, which is necessarily and to a large extent inflexible, and exceedingly difficult of amendment, should not be so construed as to deprive the states of the power to so amend their laws as to make them conform to the wishes of the citizens as they may deem best for the public welfare without bringing them into conflict with the supreme law of the land.”
It says further:
“It is difficult, if not impossible, to define the police power Of a state; or, under recent judicial decisions, to say where the constitutional boundaries limiting its exercise are to be fixed. It *340 is a power essential to be conceded to the state in the interest and for the welfare of its citizens. We may say of it that when its operation is in the direction of so regulating the use of private property, or of so restraining personal action as manifestly to secure, or to tend to the comfort, prosperity, or protection of the community, no constitutional guaranty is violated, and the legislative authority is not transcended. ’ ’
Then the decision refers to the law which required tenement houses in the city of New York to be provided with water for the protection of the health of the citizens, and it says that is a proper police regulation. The decision further says:
“By means of this power the Legislature exercises a supervision over matters affecting the common weal. It may be exerted whenever necessary to secure the peace, good order, health, morals and general welfare of the community, and the propriety of its exercise within constitutional limits is purely a matter of legislative discretion with which courts can not interfere. The courts should always assume that the Legislature intended by its enactments to promote those ends — public health, comfort and safety; and if the act admitted of two constructions that should be given to it which sustains it and makes it applicable in furtherance of the public interests.”
This case was reversed by the Supreme Court of the United States in ease of Lochner v. People, 198 U. S., 45. This case has always been decided by a divided court,, and seems rather to illustrate the uncertainty of the limits of the police power than to ñx any limits.
The Supreme Court of the United States in 169 U. S., 366, has declared a law constitutional, holding that the period of employment for workmen in mines and manufactories, where health may be injured, can be limited to eight hours a day; yet . they do not support a general law limiting the hours of labor to a certain number, but where it endangers health they do.
In 36th Northeastern Reporter, page 4, People v. Ewer, a New York case, the syllabus is as follows:
“Penal Code, Section 292, making it a misdemeanor for the parent of a female child under the age of fourteen years to procure or consent to the employment or exhibition of the child as a dancer, is a valid police regulation, and is not unconstitutional as depriving the parent of the rights to the custody and service *341 of the child, and the child of the right to follow a lawful occupation. ”
The court says:
“The assumption of the exercise of this extraordinary and very necessary power has been the subject of severe criticism in the opinion of the judges, when it has been sought thereby to regulate and control in the interest of the public the conduct of corporate or individual transactions. Munn v. State of Illinois, 94 U. S., 113, may be referred to as starting a current of authority in this country. But no such criticism can find just grounds for caviling at legislation whose ends clearly tend to promote the health or moral well-being of the members of society. To that class of legislation this statute belongs. -By preventing the exhibition of children of tender and immature age upon the theatrical or other public stage, the Legislature is exercising that right of supervision and control over the child which in every civilized state inheres in the government and which nothing in the legal relations of parent and child should be deemed to forbid.”
In 70th Pacific Reporter, page 52, State v. Buchanan, a Washington case, the syllabus is as follows:
“The act providing that no female shall be employed in certain business establishments more than ten hours in a day, does not violate the Constitution, Article I, Section 3, providing that no person shall be deprived of liberty without due process of law, but is within the police power.”
There is a case in 120 Mass., page 383, Commonwealth v. Hamilton Mfg. Co., in which the Legislature had passed-an act prohibiting the employment of all persons under eighteen years of age, and forbidding the employment of women in manufac.taring establishments more than sixty hours per week. It was held that a statute prohibiting the employment of women laboring in any manufacturing establishment more then sixty hours per week violated no right preserved under the Constitution to any individual citizen, and that such an act could be maintained as a health or police regulation.
In this decision another proposition is raised. If you will notice, this act prohibited the employment of either children under eighteen years of age or of women, in certain manufacturing establishments more than so many hours per week. They *342 raise another proposition with regard to women, but do not raise it as far as minors were concerned. That proposition was that this act deprived women of working more than a pertain number of hours per week, and therefore was unconstitutional as far as she was concerned, but it was not even raised in regard to minors. The Supreme Court disposes of that question by simply saying that it does not deprive a woman of working so many hours except at certain labor, and therefore it was. not even unconstitutional in that regard so far as she was concerned. But that question was not even raised in that ease as to the minor.
Now, of course, it is admitted that the state has the right to regulate the hours of labor of a child, and I refer to these "cases simply to show some of the decisions of the different courts as to the control of the state over the right to labor. In one case the Supreme Court of the United States holds constitutional a law limiting the number of hours that an. adult male can work in certain mines, as a health regulation.
But it is claimed that the act under which this indictment was found does not accomplish the purpose for which it was intended, and that it is not for the benefit of the minor, or a boy under sixteen years of age, or a girl under eighteen years of age to be absolutely prohibited from working or being employed after seven o’clock in the evening or before six o’clock in the morning. This is a step further, possibly, than any case I have been able to find has gone, and it is claimed that it is an arbitrary provision.
With reference to the question as to whether this provision is arbitrary or not, there is a case in 86th Pacific Reporter, page 809, Ex Parte Weber, a California case; the syllabus is as follows :
“* * * provides that any person having the care, custody, or control of any child under sixteen years of age, who exhibits, uses, or employs, or in any manner or under any pretense, sells, apprentices, gives away, lets out, or disposes of any such child to any person, for or in any business, exhibition, or vocation, injurious to the health or dangerous, to his life or limb, or for the vocation, occupation, service, or purpose of singing or playing on musical instruments, rope or wire walking, etc., shall loe *343 guilty of a misdemeanor; but that the act shall not prevent the employment of such child as a singer or musician in any church, school or academy, etc. Held:
“1. That such act was not unconstitutional for non-uniformity, in that it discriminated against children under 'sixteen years of age, in favor of those over such age.
“2. Such section was also not objectionable as making an unfair discrimination in favor of the employment of children as singers or musicians in churches, schools or academies. ’ ’
In the decision the court says:
“The contention of the petitioner is that these provisions contain an arbitrary and unreasonable classification, and consequently are not of uniform operation, and that the act constituted a special law for the punishment of crimes, where a general law could be made applicable. It is said that only a portion of the minor children of the state are affected by the act, namely, those who are under sixteen years of age,' and that this is an arbitrary discrimination between those who are over that age and those who are under that age; that any child over the age may enjoy his natural privilege of working for his own support as he pleases, while those under that age are prohibited therefrom. There is no sound reason for any such criticism. The same reasoning might be applied to a large number of laws which are universally conceded to be valid and constitutional. The law providing that a male person under twenty-one years of age is a minor, subject to the legal disabilities of minority, might be rendered unconstitutional by the same process- of reasoning. It is competent for the Legislature to provide regulations for the protection of children of immature years. The growth of a child is gradual and the age of maturity varies with different children. It is.impossible for any person to fix the exact time when a child is capable of protecting itself. The legislative judgment in regard to the proper age at which such regulations shall become applicable to the child can not be interfered with by the courts.”
In the same volume (86 Pacific Reporter), page 881, is State v. Shorey, an Oregon case; the syllabus is as follows:
‘•‘1. Federal Constitution, Fourtenth Amendment, providing that no state shall deprive any person of life, liberty, or property without, due process of law, and the State Constitution Article I, Section 1, declaring that all men when they form a social compact are equal in rights, do not limit the power of the state to interfere with the parental control of minors, or to regulate the right of a minor to contract or to be contracted with.
*344 “2. It is competent for the state to forbid the employment of children in certain callings merely because it believes such prohibition to be for their best interests, although the prohibited employment does not involve a direct danger to morals, decency, life or limb.
“3. Act prohibiting the employment of a child under sixteen years of age for a longer period than ten hours in any one day, is not unconstitutional as a deprivation of liberty or property without due process of law, or as an infringement of equal rights.”
In the decision the court quotes from Tiedeman on State and Federal Constitutions, Section 195:
“It is competent for the state to forbid the employment of children in certain callings merely because it believes such prohibition-to be for their best interest, although the prohibited employment does not involve a direct danger to morals, decency, or of life or limb. Such legislation is not an unlawful interference with the parent’s control over the child or right to its labor, nor with the liberty of the child. Their a number of authorities are cited.
“Laws prohibiting the employment of adult males for more than a stated number of hours per day or week are not valid unless reasonably necessary to protect the public health, safety, morals or general welfare, because the right to labor or employ labor on such terms as may be agreed upon is a liberty or property right guaranteed to such person by the Fourteenth Amendment of the Constitution of the United States, and with which the state can not interfere. But laws regulating the right of minors to contract do not come within'this principle. They are not sui juris, and can only contract to a limited extent. They are wards of the state and subject to its control. As to them the state stands in the position of parens patriae and may exercise unlimited supervision and control over their contracts, occupation, and conduct, and the liberty and right of those who assume to deal with them. This is a power which inheres in the government for its own preservation and for the protection of the life, person, health, and morals of its future citizens.
“ ‘It has been well remarked,’ says Mr. Justice Gray in People v. Ewer, supra, ‘that the better organized and trained the race, the better prepared it is for holding its own. Hence it is that laws are enacted looking to the compulsory education by parents of their children, and to their punishment for cruej treatment; and which limit and regulate the employment of children in the factory and the workshop to prevent injury from excessive labor.’
*345 “The constitutionality of legislation for tbe protection of children or minors is rarely questioned; and the Legislature is conceded a wide discretion in creating restraints. Even the courts which take a very liberal view of individual liberty and are inclined to condemn parental legislation would concede that such parental control may be exercised over children, so especially in the choice of occupations, hours of labor, payment of wages, and everything pertaining to education, and in these matters a wide and constantly expanding legislative activity is exercised.”
Now, this is a recent case, decided September 11th, 3906. In this statute there must have been a provision similar to the one under which this indictment was found, and they say it was not included in this question, and they did not decide it.
“It is argued, however, that the provisions of the statute forbidding the employment of such a child at any work before the hour of seven in the morning, or after the hour of six at night, is so manifestly unreasonable and arbitrary 'as to be void on that account. The defendant is not accused nor was he convicted of violating this provision of the statute, and is therefor not in a position to raise the question suggested.”
So the statute must have been similar to ours, but this question was not raised.
Now, these are a very few of the many decisions on this subject. Tt is admitted that it is a subject that the Legislature can and does have the right to control under reasonable restrictions.
Our own state has recognized the police power in numerous eases — in the 58th Ohio State, in holding the law constitutional which provides that plumbers must be licensed, and in other laws and decisions preventing the employment of minors in certain places, and providing for their compulsory education, and even depriving the parents of their control for the education of their children.
When it comes to a question of property, the Supreme Court of this state has strictly construed the statute. In the case of Palmer & Crawford v. Tingle, in the 55th Ohio State, page 443, the court declared the sub-contractor law unconstitutional, and also in the Cleveland case in the 67th Ohio State, page 197, the the court declared the law preventing a contractor,, on work *346 clone for a municipal corporation, from working more than a certain number of hours, unconstitutional.
Wads II. Ellis Attorney-General, and O. E. Harrison, for the state.
J. 0. Tallman, contra.
But the case we are now considering is a different proposition. It deals with minors, who are the wards of the state, and who have not the right to contract for their labor.
This law does not go a step further than any other which I have found construed by any court; yet along the same line the courts have construed laws governing the rights of minors to’ labor a certain number of hours, and at certain employments, for their protection, and for their health and education, and held them constitutional.
It does not seem to me that this' is such an arbitrary provision that a lower court should declare it unconstitutional. Courts should not declare acts of the Legislature unconstitutional unless they be clearly satisfied that they do violate the plain provisions of the Constitution, and especially should this rule be adhered to by a lower court.
It is not a question of what the courts may think of the advisability of passing such a law; the Legislature determines that question, and it was a subject in regard to which they had a right to legislate.
I do not feel that this court should say it was such an arbitrary provision that the Legislature in passing it violated the Constitution, and the demurrer will be overruled.